Robert HOLST, Appellants,

v.

COUNTRYSIDE ENTERPRISES, INCORPORATED, Appellees.

No. 93–2665.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1994.

Decided Feb. 2, 1994.

Edward H. Jelinek, Omaha, NE, argued (Daniel B. Cullan, Council Bluffs, IA, on brief), for appellants.

Counsel who presented argument on behalf of the appellee was Robert J. Laubenthal, Council Bluffs, IA, argued (Joseph D. Thornton, on brief), for appellees.

Before MAGILL and LOKEN, Circuit Judges, and EISELE,[*] Senior District Judge.

EISELE, Senior District Judge.

Robert Holst appeals the district court's[1] entry of judgment in favor of Countryside Enterprises following a jury verdict. In this diversity negligence action, Appellant claims that the district court erred by refusing to instruct the jury on res ipsa loquitur and by precluding the appellant's expert from referring to certain codes as the basis for his expert opinion. We affirm.

On May 30, 1988, Robert Holst, accompanied by three friends, went to play golf at the Rosman–Glendale Farm Golf Course, the clubhouse of which was leased by and maintained by Countryside Enterprises, Inc. Holst rented a motorized golf cart from Countryside Enterprises. As Holst sat in the passenger side of the golf cart, a pull-

---

[*] The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas sitting by designation.

[1]. The Honorable Ronald E. Longstaff, United States District Court Judge for the Southern District of Iowa.

type golf cart fell from the upper level of the clubhouse and struck Holst on the head. Holst was treated for a head injury and it was later determined that he had sustained brain damage.

Holst brought this action against Countryside Enterprises, claiming that Countryside Enterprises operated the clubhouse in a negligent manner and that Countryside Enterprises was negligent in not having adequate guardrails to prevent a pull-type golf cart from falling from the upper level of the clubhouse. At the conclusion of the trial, Holst tendered a res ipsa loquitur jury instruction, but the court refused it. The jury returned a verdict in favor of Countryside Enterprises.

Appellant contends that the district court's refusal to instruct the jury on res ipsa loquitur was error. As this is a diversity action, we must look to Iowa law to assess the substantive correctness of the jury instructions. *See Erie Railroad v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

■ Appellant's argument is based in part on the mistaken notion that "Countryside Enterprises' premises was the instrumentality that permitted a pull-type golf cart to fall off the upper level and strike Holst." Appellant's Brief at p. 12. Holst was struck in the head by a pull-type golf cart, not by "Countryside Enterprises' premises." Accordingly, the instrumentality that caused the injury is the pull-type golf cart.

■ Iowa law establishes that before a plaintiff is entitled to a jury instruction on res ipsa loquitur, the plaintiff must prove two foundational facts. First, the plaintiff must prove that "the defendants had exclusive control and management of the instrument that caused the plaintiff's injury." *Wick v. Henderson,* 485 N.W.2d 645, 649 (Iowa 1992). In *Wick,* the Iowa Supreme Court, elaborating on the exclusive control requirement, stated that "the test has become one of right of control rather than actual control." *Id.*

Second, the plaintiff must prove that "it was the type of injury that ordinarily would not occur if reasonable care had been used." *Id.*

■ The golf cart that fell from the upper level and struck Holst was never identified. Holst put on evidence that Countryside Enterprises rented pull-type golf carts which were gray and black or silver and black in color. The best evidence produced as to the ownership of the golf cart that struck Holst was the testimony of Lisa Nichols, who had accompanied Holst to golf course. She testified that the carts on the grassy hill were being rented by Countryside Enterprises. Appellant's Appendix at p. 38. No evidence was presented identifying the specific golf cart that struck Holst as being owned by Countryside Enterprises. Additionally, and more importantly, Appellant failed to prove that the offending cart had not been rented out to a golfer at the time of the accident.

■ Appellant argues that Appellee "had an opportunity, but did not produce any evidence at trial, to prove that the pull-type golf cart had been rented to a customer." Appellant's Brief at p. 15. This statement illustrates Appellant's confusion about the applicable burdens of proof. It is clear under Iowa law that it is the plaintiff, not the defendant, who must provide the proof necessary to establish entitlement to a res ipsa loquitur instruction. Consequently, it was the Appellant who had the opportunity and the obligation to present evidence on whether the pull-type golf carts located on the upper level of the clubhouse, one of which fell and struck the Appellant, had been rented that morning. Appellant failed to do so.

■ Appellant clearly fell short of his burden to prove that Appellee had exclusive control and management over the pull-type golf carts on the clubhouse's upper level on the morning that the Appellant's injury occurred. Consequently, the district court's decision not to instruct the jury on res ipsa loquitur must be affirmed.[2]

---

2. We note that the district court did somewhat misstate the law when it refused the res ipsa loquitur instruction. During the conference on the jury instructions and after its ruling to ex-

clude the res ipsa loquitur instruction, the court stated: "I might just say the reason is I don't believe what caused the injury is in dispute here, and I think the doctrine applies when we don't

■ Appellant raises a second issue regarding the exclusion of certain evidence by the district court. District courts are invested with broad discretion to determine whether evidence should be admitted or excluded. Accordingly, a district court's evidentiary rulings will be overturned only upon a determination that the district court abused its discretion. *Robertson v. Union Pacific Railroad Co.*, 954 F.2d 1433 (8th Cir.1992).

William Latenser, an architect, testified as an expert for the Appellant and rendered his opinion that "the absence of guardrails along the retaining wall and the inadequate guardrails along the balcony would deem this [clubhouse area] to be an unsafe property." Appellant's Appendix at 10. The basis of Latenser's opinion was identified on direct examination as "various safety standards in the industry concerning the safety of premises that are recognized and used in the evaluation of premises." Appellant's Appendix at 8–9. Appellant made no attempt during Latenser's direct testimony to elicit information regarding any specific ordinance, statute, or fire code.

Appellant argues that the district court erred in refusing to allow Latenser to testify as to the application of and violation by Countryside Enterprises of certain code requirements.[3] There is apparently agreement that the Iowa Uniform Building Code did not apply because Shelby County, the location of the golf course, had failed to adopt an implementing ordinance. Appellant contends that a state fire code relating to guardrails still applied and that Latenser should have been permitted to testify as to that code and its requirements.[4]

■ During cross-examination, Latenser was prohibited from testifying that Countryside Enterprises' failure to have guardrails violated the Fire Marshall Safety Code. The matter was extensively considered by the court. The discussion of the issue reads in pertinent part:

THE COURT: ... I'll direct the witness not to testify in front of this jury that there are any legal codes, building codes that have been violated by the defendant. Do you have any objection to that counselor?

HOLST'S ATTORNEY: Your honor, there probably—the fire code does apply everywhere, but that's not something that we've been, you know, talking about.

THE COURT: But it didn't come out in his direct testimony, right?

HOLST'S ATTORNEY: No. I stayed away from it at everyone's request.

THE COURT: So now, I'm just saying from now on, I don't want the witness to make any reference to any building code that he claims is violated by the premises out there, okay? Fair?

HOLST'S ATTORNEY: All right.

Appellee's Appendix at p. 20–21. Apparently, the "request" to which Holst's attorney

---

know what caused the injury." Appellant's Appendix at p. 61. Res ipsa loquitur is not limited to those instances in which the cause of the injury is unknown. The court's ruling was correct as a matter of law, however, as discussed herein, and it must be affirmed regardless of why the court chose not to submit the res ipsa loquitur instruction.

3. Appellant also argues that the testimony of Countryside Enterprises' expert witness, Mr. Carrithers, stating that he knew of no common sense rule in architecture mandating that guardrails be installed between changes in elevation, opened the door to permitting rebuttal testimony referring to the Iowa Administrative Code. Holst failed to object to this testimony, and thus, failed to preserve this issue for scrutiny on appeal. Furthermore, were the issue preserved, Appellant's argument is nonsensical since Mr. Carrithers' testimony was based on the same architectural standards that supported Mr. Latenser's testimony, and there is no evidence in the submitted record that Mr. Carrithers ever referred to any specific code, statute or regulation.

4. It is difficult to see what advantage Holst might have if Latenser were permitted, after testifying that the absence of guardrails made the property "unsafe," to then add, "and the lack of guardrails also violated the fire code." Furthermore, it would not be appropriate to prove the fire code by the testimony of the expert architect. Ordinarily, codes, regulations, and statutes are, if relevant, established through judicial notice. And, as pointed out elsewhere, the fire code itself is not in the record. A priori one wonders how a code ostensibly dealing with conditions reducing the risk of fire and damage by fire would be relevant to the issues in this case. In any event, we cannot tell from this record.

refers is the court's preliminary ruling regarding opening statements. Based on Appellee's motion in limine, the court precluded any explicit reference to applicable codes during the opening statements. Clearly, however, that ruling only applied to the opening statements and was not an evidentiary ruling meant to be applied throughout the trial.[5] In fact, the court invited the Appellant to attempt to get into that evidence during the testimony of witnesses.

 The discussion during Latenser's cross examination continued:

THE COURT: Now we're in trouble. I don't know where to go from here. Just try to not to imply that they violated any standard or code out there because we don't have anything that's applicable.

HOLST'S ATTORNEY: In fairness to the witness, Your Honor, I do think the Fire Safety Code applies to any building in the state.

THE COURT: In fairness to me, that didn't come up in direct testimony. I'm just trying to regulate the record I have, okay?

Appellant's Appendix at p. 24.

Based on the above exchange, it seems obvious that the court was merely ruling that the plaintiff had not established a basis on which to allow the witness to testify regarding any applicable codes. Further, plaintiff's counsel failed to make the requisite offer of proof and cannot be heard now on this fire code argument.

Based on the foregoing, it is obvious that (1) the district court's ruling on the motion in limine did not preclude any type of evidence from being introduced during the testimony of witnesses; (2) no attempt was made during Latenser's direct testimony to elicit testimony on any particular type of codes or statutes; and (3) Appellant failed to make an offer of proof concerning the applicability of any codes, statutes or regulations.

 In fact, no exclusion of evidence on fire codes exists here. By not asking the court to take judicial notice of the fire code and by making no attempt on direct with Latenser to elicit any testimony regarding building codes, Appellant provided no basis for the introduction of that evidence on cross-examination or on re-direct. Further, if the district court's pre-trial ruling on the motion in limine was intended to exclude any evidence on codes or statutes at trial, Appellant's argument must fail because Holst failed to make the requisite offer of proof to preserve the issue for appeal.

One of the most fundamental principles in the law of evidence is that in order to challenge a trial court's exclusion of evidence, an attorney must preserve the issue for appeal by making an offer of proof. In this Circuit, "[e]rror may not be predicated upon a ruling excluding evidence unless a substantial right of the party is affected and 'the substance of the evidence was made known to the court by offer [of proof] or was apparent from the context within which questions were asked.'" *Strong v. Mercantile Trust Co. N.A.*, 816 F.2d 429, 431 (8th Cir.1987) (in part *quoting* Fed.R.Evid. 103(a)(2)), *cert. denied* 484 U.S. 1030, 108 S.Ct. 759, 98 L.Ed.2d 771 (1988).

Quite simply, no error based on the law of evidence occurred in this case.

For the reasons stated above, the district court is hereby affirmed.

---

5. Prior to instructing both parties not to mention any codes in the opening statements, the court stated:

THE COURT: Where did you get into the code, the building codes.

HOLST'S COUNSEL: Well, the codes—he is correct about they didn't adopt the ordinance out there, but one superseding code, which is state code which applies everywhere, whether they've adopted it or not, is the state fire code, which relates to guardrails, and the Iowa Administrative Code, which relates to guardrails, handrails, and so forth, and that does apply to the particular—whether they've adopted it or not—fire codes.

THE COURT: And we're going to visit about that when the expert testifies, right?

HOLST'S COUNSEL: I suspect so; that's right.

Appellant's appendix at p. 5.