# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3692

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jeffrey Joseph Davis, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 23, 2009
Filed: December 18, 2009

_____

Before RILEY, SMITH, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Jeffrey Joseph Davis (Davis) appeals his conviction for willful failure to pay his child support obligations, in violation of 18 U.S.C. §§ 228(a)(3) and 228(c)(2). The district court[1] denied Davis's motion for a judgment of acquittal at the close of the government's evidence and his renewed motion at the close of all the evidence. Davis argues the district court erred in denying his motions for judgment of acquittal

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

because the government failed to prove Davis's failure to pay child support was willful. We affirm.

## I. BACKGROUND

Davis fathered two daughters with Shanon Janey (Janey), whom he met while attending high school near Cedar Rapids, Iowa. Davis's and Janey's first daughter was born in 1990. Their second daughter was born in 1992. Davis and Janey were never married, but they lived together with their daughters in a mobile home park until the couple separated in approximately 1996. Janey and her daughters have lived with Janey's parents on a livestock farm in Watkins, Iowa, since 1998.

On January 28, 2000, the Iowa District Court for Benton County (Iowa district court) entered a default order against Davis, establishing paternity and ordering Davis to pay $723.00 per month in child support. Because Davis failed to provide his financial information, the $723.00 monthly support obligation was calculated by using information reported to the Iowa Workforce Development in 1999 by one of Davis's employers. The employer reported Davis earned $1,279.00 from April 19 to May 1, 1999.

In 2000, Davis did not make any support payments, and no money was collected from him. On July 26, 2001, the Iowa district court held a hearing and found Davis in contempt of court for his failure to pay child support. The court ordered Davis to spend thirty days in county jail, unless he paid $2,000.00 in support by July 30, 2001. Davis made the $2,000.00 payment to purge himself of the contempt. In addition to the $2,000.00 payment, the Cedar Rapids, Iowa, Child Support Recovery Unit (CSRU) was able to recover an additional $2,963.28 from Davis in 2001 by sending income withholding orders to Davis's employers. The CSRU reported it experienced difficulty obtaining income withholding payments from Davis because Davis frequently switched employers, and by the time the CSRU had an income

withholding order in place with a particular employer, Davis sometimes was no longer employed with that employer.

On January 10, 2002, the Iowa district court again found Davis in contempt because Davis failed to pay child support in November 2001, December 2001, and January 2002, even though he "had the ability to pay some or all of said support." The court further found Davis's "failure to pay child support [wa]s willful." The CSRU collected $1,638.00 through federal and state tax offsets in January and February 2002. Later in 2002, Davis sought an adjustment of his child support obligation, and the CSRU recommended a reduction. On July 26, 2002, the Iowa district court reduced Davis's monthly support obligation to $570.18, after imputing to Davis an earning capacity of $30,000.00 per year.

Davis made no voluntary support payments in 2002, 2003, or 2004. In 2003, the CSRU collected only $1,885.00 from Davis and $845.07 in 2004, all as a result of income withholding.

In August 2004, the CSRU learned Davis was working in Colorado. In January 2005, the CSRU referred Davis's case to Colorado's child support services to act on CSRU's behalf. Davis made no payments, and no support was collected from Davis in 2005, 2006, 2007, and 2008. As of July 2008, Davis owed a total of $52,354.75 in unpaid child support.

On April 23, 2008, a federal grand jury returned a two-count indictment against Davis. Count 1 charged Davis with willful failure to pay a past due child support obligation, in violation of 18 U.S.C. § 228(a)(3), and Count 2 charged Davis with willful failure to pay a past due child support obligation, in violation of 18 U.S.C.

§ 228(a)(1).[2] Davis pled not guilty to the charges. A two-day jury trial commenced on July 23, 2008. The district court denied Davis's Fed. R. Crim. P. 29 motion for judgment of acquittal at the close of the government's evidence and denied his renewed motion at the close of all the evidence. The jury found Davis guilty on Count 1. The district court dismissed Count 2, a lesser-included offense. The district court sentenced Davis to 24 months imprisonment and 1 year of supervised release, and ordered him to pay $53,637.83 in restitution.

## II. DISCUSSION

"We review de novo a district court's denial of a motion for judgment of acquittal. We view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Cannon, 475 F.3d 1013, 1020 (8th Cir. 2007) (internal citations omitted). "In reviewing the denial of a motion for judgment of acquittal based on insufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and reverse only if no rational fact finder could have found the defendant guilty beyond a reasonable doubt." United States v. Kirkie, 261 F.3d 761, 768 (8th Cir. 2001) (citations omitted).

Davis contends the district court erred in denying his motions for a judgment of acquittal because the government failed to prove Davis's failure to pay child support was "willful." The term "willful" as used in 18 U.S.C. § 228 "requires proof

[2]A violation of 18 U.S.C. § 228(a)(3) occurs when a person "willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000." A person violates 18 U.S.C. § 228(a)(1) when he "willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000."

of an intentional violation of a known legal duty." United States v. Harrison, 188 F.3d 985, 986 (8th Cir. 1999) (quoting H.R. Rep. No. 102-771, at 6 (1992)). To prove Davis willfully failed to pay his past due child support obligations, the government was required to show Davis had the ability to pay. See id. at 986-87.

Davis first argues his failure to pay child support was not willful because the government did not, and could not, prove Davis had the ability to pay the *entire* amount of child support ordered by the Iowa district court. Davis insists 18 U.S.C. § 228(a)(3) "does not impose liability on those with the ability to pay some, but not all, of a court-ordered child support obligation." Davis suggests the plain language of § 228 supports his position. Section 228(f)(3) states, "[T]he term 'support obligation' means *any amount* determined under a court order or an order of an administrative process pursuant to the law of a State . . . to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living." 18 U.S.C. § 228(f)(3) (emphasis added).

We have not yet addressed the argument Davis now makes; however, two of our sister circuits have addressed this same argument. See United States v. Mattice, 186 F.3d 219 (2d Cir. 1999); United States v. Mathes, 151 F.3d 251 (5th Cir. 1998). In Mathes, the defendant argued the government's evidence was insufficient to support a conviction under § 228 because the government had not shown "[Mathes] possessed sufficient funds . . . to pay his past due support obligation in its *entirety*." Mathes, 151 F.3d at 253 (emphasis added). The Fifth Circuit rejected this argument, declaring, "Mathes's interpretation of the [Child Support Recovery Act (CSRA)] as requiring proof beyond a reasonable doubt that, during the period alleged in the indictment, the defendant had the ability to pay the *entire amount* of past due child support owed possesses no basis in the language of the statute." Id. at 254 (emphasis added). The Fifth Circuit determined, "Mathes's legal obligation to pay . . . approximately $20,000 in child support arrearages necessarily encompassed an obligation to pay any lesser-included amount that Mathes was capable of paying," and

thus, "[Mathes] could have willfully failed to pay the lesser amount that he was capable of paying." Id. The Fifth Circuit continued, "Were we to conclude otherwise, child support obligors would be able to insulate themselves from criminal liability by simply failing to make child support payments until the total amount past due is an amount that they are incapable of paying in one lump sum." Id.

The Second Circuit agreed with the Fifth Circuit. See Mattice, 186 F.3d at 227-28. Judge Sonia Sotomayor, writing for the Second Circuit, found "Congress's choice of 'any amount,' rather than 'the amount,' [wa]s significant." Id. at 227 (referring to the definition of "obligation" found at 18 U.S.C. § 228(d) (1999), the prior version of 18 U.S.C. § 228(f)(3)). The Second Circuit reasoned, "The relevant 'obligation' under the CSRA . . . is the obligation to pay 'any amount' past due under a state court or administrative child support order. . . . [Therefore] the government must demonstrate only that the defendant was able to pay *some* portion of his past due child support obligations in order to establish liability under the CSRA." Id. at 228.

We agree with the reasoning of the Fifth and Second Circuits.[3] If Davis's child support obligation was more than he could pay, Davis's remedy was in the Iowa district court where Davis could seek modification of his support obligation. The CSRA is legislation designed to assist and enforce state child support orders, not a law to modify or undermine such state orders. It is logical to assume, if Congress had intended § 228(a)(3) to impose liability only on those individuals who have the ability to pay the *entire* support obligation, but fail to do so, Congress would have said so.

---

[3]Davis refers us to United States v. Holbrook, 15 F. Supp. 2d 10, 18-19 (D.D.C. 1998), wherein a district court judge granted a defendant's motion for judgment of acquittal based on the government's failure to prove the defendant had sufficient income to pay the entire past due child support obligation. We conclude the Second and Fifth Circuits' interpretation of 18 U.S.C. § 228 is better reasoned, and we decline Davis's invitation to adopt the reasoning of Holbrook.

We also note Davis jointly submitted to the district court the following proposed jury instruction, and failed to make any objection to the instruction's submission to the jury:

> You may find that [Davis] had the financial ability to pay and acted willfully if you find that he had sufficient income or assets, or both, to enable him to pay the child support obligation, or at least make partial payments. In other words, if you find that he had the ability to pay more than he did in fact pay, you may find that his failure to pay more was willful.

This instruction is in accord with our view and the Second and Fifth Circuits' interpretation of 18 U.S.C. § 228. We thus reject Davis's argument and conclude the government was not required to prove Davis had the ability to pay the entire amount of past due child support in order to prove Davis willfully failed to pay child support in violation of 18 U.S.C. § 228(a)(3).

In the alternative, Davis claims, even if the government could prove willfulness by showing Davis had the ability to pay something less than the entire amount of past due child support, the government failed to prove Davis had the ability to pay any more child support than he did. Davis contends the government failed to meet its burden to show Davis's failure to pay was willful because the government never presented evidence to the jury establishing what amount of support Davis reasonably could have paid. Without such evidence, Davis suggests "the jury was left without any compass to guide them." We disagree.

The jury instructions, to which Davis stipulated and did not object, permitted the jury to find Davis willfully failed to pay child support if the jury found Davis "had the ability to pay more than he did in fact pay." The jury was not required to specify what amount of support Davis could pay. The government presented evidence concerning Davis's skills, employment history, and income. The jury also heard

testimony and viewed exhibits outlining the Iowa CSRU's difficulty in keeping track of Davis and collecting child support payments from him. The jury was aware of the fact that every child support payment collected from Davis was either the result of an income withholding order or a payment made to purge contempt. The jury learned the CSRU was unable to collect any payments from Davis after December 2004, even though the evidence showed Davis earned income in Colorado from various employers in 2005 through 2007. Janey testified, when she confronted Davis about his child support responsibility, Davis told Janey, "No, I'm not going to help you out," and "They're your girls." Additionally, the Iowa district court in its January 10, 2002, order found Davis "had the ability to pay some or all of [the child] support," and Davis's "failure to pay child support [wa]s willful."

Viewing the evidence in the light most favorable to the government and accepting all reasonable inferences drawn from the evidence that support the jury's verdict, we conclude there was sufficient evidence for the jury to find Davis was capable of paying more child support than he did, and therefore, find Davis guilty of willfully not paying his child support obligations, in violation of 18 U.S.C. § 228(a)(3). See Cannon, 475 F.3d at 1020.

## III. CONCLUSION

For the reasons stated in this opinion, we affirm the district court's judgment.

_____