# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3433

_____

United States of America,                    *
                                             *
              Appellee,                      *
                                             *
      v.                                     *
                                             *
Ulises Ariel Lopez,                          *
                                             *
              Appellant.                     *


_____                          Appeals from the United States
                                     District Court for the
No. 03-3434                          Southern District of Iowa.
_____

United States of America,            *
                                     *   [PUBLISHED]
              Appellee,              *
                                     *
      v.                             *
                                     *
Israel Gonzales-Lara,                *
                                     *
              Appellant.             *

                          _____

                 Submitted:  May 11, 2004
                     Filed:  October 7, 2004

                          _____

Before LOKEN, Chief Judge, BRIGHT, and SMITH, Circuit Judges.
_____

PER CURIAM.

The Government tried Ulises Ariel Lopez and Israel Gonzales-Lara together on charges arising out of a drug conspiracy that took place in Des Moines, Iowa. Lopez appeals his convictions after a jury found him guilty of conspiring to distribute methamphetamine and of possessing methamphetamine with intent to distribute. See 21 U.S.C. §§ 841(a)(1); 841(b)(1)(A); and 846. Lara appeals his conviction and sentence after a jury found him guilty of conspiring to distribute methamphetamine. See 21 U.S.C. §§ 841(a)(1) and 846. We consolidated the appeals. For reversal, Lopez argues that the district court erred by admitting hearsay evidence. Lara raises additional claims of error that he argues rendered his trial fundamentally unfair. Lastly, Lara argues that the district court erred in enhancing his offense level for possessing a firearm. For the following reasons, we affirm Lopez's and Lara's convictions and Lopez's sentence. We vacate the enhancement to Lara's sentence for possession of a firearm and remand his sentence for further consideration.

## I.    Background

We recite the facts in the light most favorable to the jury's verdict. See United States v. McCracken, 110 F.3d 535, 540 (8th Cir. 1997). Felix Baccam and Israel Gonzales-Lara a/k/a Isaac Ramos met at a Des Moines, Iowa night club in May of 2002. During their encounter, Baccam expressed interest in distributing methamphetamine and Lara agreed to supply Baccam with methamphetamine. According to the agreement, Lara would "front" Baccam the methamphetamine and would receive payment after Baccam sold it to his buyer, Joe Hernandez. At first, Lara provided Baccam with one pound of methamphetamine every seven to ten days. After a few months, Baccam requested more methamphetamine and Lara provided him with two pounds every seven to ten days. A short time later, Baccam informed

-2-

Lara that he could sell additional amounts of methamphetamine. Lara increased the amount he provided to three pounds. At the first three-pound delivery, Lara introduced Baccam to his supplier, Ulises Ariel Lopez. Baccam paid Lara in cash for the previous delivery and Lara gave the money to Lopez.

Unbeknownst to Baccam, police arrested his buyer, Hernandez, on simple possession charges. In cooperation with the police department, Hernandez told police he bought methamphetamine from Baccam. He provided the police with information about past drug transactions including the location of the transactions and a description of the vehicle Baccam drove to the transactions. He arranged to meet Baccam for another delivery and police set up surveillance at the location.

On October 2, 2002, Lopez accompanied Lara to deliver another three pounds of methamphetamine to Baccam. Lara gave the methamphetamine to Baccam. Baccam left to deliver the methamphetamine to his buyer and Lopez accompanied him. Police stopped Baccam's vehicle when it approached the location. The police recovered three pounds of methamphetamine from the floor behind the passenger seat and a loaded .380 caliber pistol from under the driver's seat. The police arrested both Baccam and Lopez. Later that evening, police arrested Lara on unrelated charges and took him to the Polk County Jail, where police later learned of Lara's participation in the conspiracy.

The Grand Jury returned a three-count indictment. Count one charged Lara, Lopez and Baccam with conspiracy to knowingly and intentionally distribute methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. Count two charged Lopez and Baccam with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count three charged Baccam with possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Baccam pleaded guilty to counts two and three and testified at trial against Lara and Lopez.

-3-

Shawn Miller, Lara's cellmate, also testified at trial. Miller testified that while in the cell together, Lara described his role in a drug conspiracy with two other individuals. Lara told Miller that he acted as the middleman between Lopez and Baccam, receiving methamphetamine from Lopez and then giving it to Baccam to distribute. Lara also told Miller that he had six to eight more pounds of methamphetamine that he needed to unload. Miller agreed to help Lara get rid of the remaining methamphetamine. According to Miller, Lara's girlfriend deposited $1,400 in Miller's account to secure his cooperation in disposing of the drugs. Lara's girlfriend and Lara testified that she deposited the money as security for renting Miller's apartment.

Lara's attorney argued during opening statements that another individual named Isaac Ramos, not Lara, participated in the conspiracy with Baccam and Lopez. To support the argument Lara introduced testimony from Paul Feddersen, a state drug investigator. During the course of one of Feddersen's investigations he spoke to a man named Isaac Ramos by telephone. The Isaac Ramos that Feddersen spoke with had an Asian accent; Lara is Mexican. However, when officer Feddersen arrived to testify he brought with him a videotape showing Lara with the other drug conspirators. Before testifying, Feddersen showed the video to Lara and the Government. Despite the videotape, Lara presented Feddersen's testimony. The Government presented the video on cross-examination. Other witnesses, including Lara's girlfriend, testified that Lara used the name Isaac Ramos on many occasions.

The jury returned a guilty verdict on count one for both Lara and Lopez and count two for Lopez. The jury found beyond a reasonable doubt that the quantity of drugs possessed during the course of the conspiracy exceeded fifty grams of actual methamphetamine or 500 grams of a mixture or substance containing methamphetamine, but no further quantity determination was proved to the jury.

The presentence investigation reports for Lopez and Lara recommended a base offense level of 36. The level reflected the amounts of methamphetamine attributed to the conspiracy by the Government's main witnesses, Baccam and Miller. The presentence investigation reports also recommended that both Lopez and Lara receive a two-level enhancement for possession of a firearm by Baccam, a co-conspirator, pursuant to U.S.S.G. §§ 1B1.3(a)(1)(B) and 2D1.1(b) and a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 because both dishonestly testified on their own behalf during trial.

Lopez and Lara objected to the calculation of the base offense and argued that the amount attributed to the conspiracy be restricted to the amount seized by police when they arrested Baccam. The amount seized would support a base offense level of 32. See U.S.S.G. § 2D1.1(c). Lopez and Lara also objected to the firearm enhancement and Lara objected to the obstruction of justice enhancement.

The district court used a base level of 36 based on its calculation of the drug quantity described in Baccam's testimony. The district court applied the firearm enhancement to both Lara and Lopez but only applied the obstruction of justice enhancement to Lopez. The court sentenced Lopez to a term of 292 months imprisonment and Lara to a term of 235 months imprisonment. Lara and Lopez timely appealed.

## II.    Discussion

### A.    Lopez's Conviction

Lopez argues that the district court erred by allowing Miller's testimony to be introduced against him. We review a district court's decision to admit a co-conspirator's statement for abuse of discretion and reverse if the error substantially prejudiced the outcome. See United States v. Frazier, 280 F.3d 835, 848 (8th Cir.

2002) and United States v. Beckman, 222 F.3d 512, 522 (8th Cir. 2000). Rule 801(d)(2)(E) of the Federal Rules of Evidence allows a statement that would otherwise be hearsay to be admitted if a co-conspirator made the statement "during the course and in furtherance of the conspiracy." Lara approached Miller and asked him to dispose of methamphetamine. At this time, Miller became Lara's co-conspirator. Miller's testimony regarding statements made by Lara in furtherance of the conspiracy fall within the hearsay exception when introduced to show Lara's involvement in the conspiracy. The district court can properly admit evidence implicating one co-conspirator even if the evidence prejudices the other co-conspirator if it gives the jury a limiting instruction. See United States v. Frazier, 280 F.3d 835, 844 (8th Cir. 2002).

Regardless of whether the district court properly admitted Miller's testimony, we do not reverse because the error did not prejudice the outcome of the case. "An error is harmless if the reviewing court, after viewing the entire record determines . . . the error did not influence or had only a very slight influence on the verdict." United States v. Hafiz, 129 F.3d 1011, 1012 (8th Cir. 1997) (citation omitted). Police arrested Lopez and Baccam en route to deliver drugs to Joe Hernandez. Police found three pounds of methamphetamine in the car directly behind Lopez on the floor behind the passenger seat. Additionally, Felix Baccam testified at trial that Lopez provided the drugs to Lara and that Lara paid Lopez for the drugs. Even without Miller's testimony, the jury had enough evidence to find Lopez guilty. Therefore, we affirm Lopez's conviction.

## B. Lara's Conviction

Lara makes several arguments for reversal related to the district court's rulings on evidentiary matters that require little attention. Lara argues that the district court (1) erred by allowing Miller to testify about conversations he had with Lara's girlfriend, (2) erred by failing to strike Lara's aliases from court documents, (3) erred

by refusing to admit documents showing criminal convictions of the Government's witnesses and (4) erred by allowing the Government to present the videotape because the Government improperly withheld the tape from him which prevented him from preparing a proper defense.

We review evidentiary rulings for abuse of discretion and reverse only when an erroneous ruling prejudices the outcome of the case. See United States v. Ball, 868 F.2d. 984, 987 (8th Cir. 1989) and United States v. Kirkie, 261 F.3d 761, 767 (8th Cir. 2001). The district court's evidentiary rulings in this case did not prejudice the outcome and therefore require little discussion. Prejudice results when an erroneous evidentiary ruling affects the substantial rights of the defendant or when the error has a significant impact on the verdict. See United States v. Kirkie, 261 F.3d 761 (8th Cir. 2001). Even if the district court erred, as Lara argues, the cumulative effect of the error did not outweigh the overall impact the inculpatory evidence presented by the Government had on the ultimate verdict. Felix Baccam testified at trial that Lopez provided the drugs to Lara and that Lara paid Lopez for the drugs. He also testified that he bought methamphetamine from Lara on numerous occasions. Additionally, Shawn Miller testified that Lara told him about his involvement with Baccam and Lopez. Lara asked Miller to dispose of the remaining methamphetamine and paid him $1,400 to do so. This properly admitted evidence, taken as a whole, could suffice to convince a reasonable jury of Lara's guilt. If indeed the district court made erroneous evidentiary rulings, the rulings did not harm the outcome of the case.

Lara also argues that the district court erred by failing to submit his requested instruction to the jury. We review the district court's decision to withhold requested jury instructions for abuse of discretion. United States v. Beckman, 222 F.3d 512, 520 (8th Cir. 2000). Lara requested that the district court give the jury an option to find that the Government had not proven its case. The district court declined and ordered the jury to find Lara either guilty or not guilty. We give the district court

considerable discretion in formulating jury instructions. United States v. Richmond, 700 F.2d 1183, 1195 (8th Cir. 1983). We will not reverse a conviction when the jury instructions given to the jury correctly stated the law. United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000). The Eighth Circuit Model Jury Instructions allow for two verdicts in a criminal trial: guilty and not guilty. See Eighth Circuit Manual of Model Jury Instructions – Criminal Instruction 3.06. To our knowledge we have never approved the use of a "not proven" verdict. Thus, it was within the district court's discretion to deny Lara's jury instructions.

Lara further argues that the district court erred in denying his motion for a judgment of acquittal because the Government presented insufficient evidence. "In reviewing a challenge to the sufficiency of the evidence, we may reverse a jury's verdict only where a reasonable fact-finder must have harbored reasonable doubt relating to the government's proof on at least one of the essential elements of the offense." United States v. Jensen, 141 F.3d 830, 833 (8th Cir. 1998). We give the jury's verdict the benefit of reasonable inferences gathered from the record. Id. In a conspiracy prosecution the Government must prove beyond a reasonable doubt (1) that an agreement to achieve an illegal purpose existed, (2) that the defendant knew about the agreement and (3) that the defendant knowingly became a part of the agreement. See United States v. Ivey, 915 F.2d 380, 383-84 (8th Cir. 1990). Lara questions the credibility of Baccam and Miller. He argues that the Government did not satisfy its burden of proof beyond a reasonable doubt because the witnesses testified in order to receive leniency from the Government on their own charges. "Jury verdicts are not lightly overturned." United States v. Hood, 51 F.3d 128, 129 (8th Cir. 1995). Although we have commented in the past on the often dubious credibility of witnesses who testify in exchange for leniency from the Government, see United States v. Aguilar-Portillo, 334 F.3d 744, 747 (8th Cir. 2003), we can neither weigh the evidence nor assess the credibility of the witnesses. United States v. Stroh, 176 F.3d 439, 440 (8th Cir. 1999).

Although the Government presented the jury with largely circumstantial evidence, the evidence was sufficient for a reasonable jury to convict Lara. See United States v. Wilcox, 50 F.3d 600, 602-03 (8th Cir. 1995). With the use of testimony from Baccam and Miller coupled with corroborating evidence, the Government adequately showed that Lara entered into an agreement with Baccam and Lopez to distribute methamphetamine. Baccam testified that Lara initiated an agreement with him to supply methamphetamine. The Government also showed that Baccam sold the methamphetamine that Lara provided to Hernandez on more than one occasion and gave the money he received from the sales to Lara. Furthermore, according to Miller's testimony, Lara solicited him to join the conspiracy and help unload the remaining methamphetamine. The verdict was supported by a credibility assessment of Baccam's and Miller's testimonies, and we cannot review the jury's assessment. We affirm Lara's conviction.

## C.  Lara's Sentence

In Lara's last argument, he contends that the district court erred by applying a two-level sentencing enhancement for possession of a firearm by a co-conspirator. He contends the district court incorrectly applied the enhancement because the Government did not present sufficient evidence showing an adequate nexus between him and the gun.

Federal Sentencing Guideline § 2D1.1(b)(1) mandates a two-level sentencing enhancement for any defendant who possesses a dangerous weapon in connection with a narcotics crime. U.S.S.G. § 2D1.1(b)(1), app. n. 3 (2003). In order for the enhancement to apply there must be "a temporal and spacial relation [] between the weapon, the drug trafficking activity, and the defendant." United States v. Payne, 81 F.3d 759, 763 (8th Cir. 1996).

In United States v. Atkins, we upheld a § 2D1.1(b)(1) sentencing enhancement when the defendant knew his co-conspirator possessed a gun and knew, based on past experience, that his co-conspirator brought the gun along when delivering drugs. 250 F.3d 1203, 1213 (8th Cir. 2001). In contrast, when police arrested Baccam and Lopez, Lara was across town in a hotel room. Police found the gun below the driver's seat in Baccam's vehicle. The Government did not present any evidence that showed Lara knew Baccam owned a gun. Nor did the Government present evidence that showed Lara knew Baccam carried a gun when he delivered drugs to Hernandez.

To support Lara's sentence, the Government argues that we can infer a defendant's knowledge based solely on the nature of drug dealing. Cf. United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002) (acknowledging the close connection between firearms and drugs). We disagree. Under the Guidelines, a two-level firearm enhancement can only be applied if the Government shows that the defendant knew or should have known based on specific past experiences with the co-conspirator that the co-conspirator possessed a gun and used it during drug deals. See United States v. Highsmith, 268 F.3d 1141, 1142 (9th Cir 2001) (holding that the firearm enhancement was not applicable where the defendant had access to the co-conspirator's weapon but did not know that the weapon existed). To hold otherwise would unfairly penalize defendants for conduct over which they have no control. Here the Government failed to present any evidence showing that Lara knew or should have known that Baccam possessed a firearm. Thus, we unequivocally vacate the two-level firearm enhancement for Lara and remand for resentencing.

## III.    Conclusion

As explained above, we affirm Lara's and Lopez's convictions. We also affirm Lopez's sentence. Finally, we vacate Lara's enhancement for the possession of a firearm and remand to the district court for resentencing and further consideration.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

BRIGHT, Circuit Judge, concurring and dissenting.

I concur in affirming both Lara's and Lopez's convictions and vacating Lara's sentence for further consideration. I dissent in affirming Lopez's sentence. Lopez has filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) calling our attention to the United States Supreme Court's opinion in Blakely v. Washington, 124 S.Ct. 2531 (2004), and asserting that his sentence could be subject to adjustment. In Blakely, the Court held that portions of the State of Washington's sentencing guidelines were unconstitutional because they deprived a defendant of his Sixth Amendment right to "insist that the prosecutor prove to a jury all facts legally essential to the punishment." Id. at 2543. The district court has not had an opportunity to consider the effect of Blakely on Lopez's sentence. I would, therefore, also remand Lopez's sentence to the district court for further consideration in light of Blakely and its progeny.[1]

—————————————————————

[1] I take this language in part from this court's treatment of the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995), where the Supreme Court clarified a statute relating to crime and punishment. The Court determined that the Bailey case applied to pending appeals even where the issue was not raised in the district court. See United States v. McKinney, 79 F.3d 105 (8th Cir. 1996), vacated by, McKinney v. United States, 520 U.S. 1226 (1997) (reversing the Eighth Circuit's holding that the Supreme Court's decision in Bailey did not apply to a pending appeal); Johnson v. United States, 520 U.S. 461 (1997) (holding that the court of appeals ought to engage in plain error review with respect to legal principles not recognized at the time of the relevant trial, but recognized before the appeal was decided); see also Schriro v. Summerlin, ___ U.S. ___, 124 S.Ct. 2519, 2522 (2004) (stating "[w]hen a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review").

-11-